DeMARA v GOVERNOR

Docket No. 112152. Submitted December 20, 1989, at Lansing. Decided April 2, 1990.

At the age of fifty-seven and after having served thirty-nine years in the Michigan National Guard, Brigadier General Richard D. DeMara was separated from the Guard and placed on the State Military Retired List. DeMara requested reinstatement through the normal chain of command. That effort failed, and DeMara filed suit against the Governor, the Department of Military Affairs, and the Michigan National Guard in Ingham Circuit Court alleging, inter alia, age discrimination under the Civil Rights Act. Defendants moved for summary disposition on the ground that plaintiff must first exhaust his remedies under 10 USC 1552, which provides for an appeal to the Army Board of Correction of Military Records. The court, James R. Giddings, J., agreed and granted summary judgment in favor of defendants. Plaintiff appealed.

The Court of Appeals *held:*

The trial court erred in granting summary disposition on the ground that plaintiff must first pursue his administrative remedies. A person who has been injured as a result of a violation of the Civil Rights Act may seek injunctive relief or damages, or both, by commencing an action in circuit court and is not required to exhaust administrative remedies provided by federal law before proceeding in the circuit court. The fact that plaintiff is a member of the National Guard, an entity largely funded by federal funds and subject to both federal and state statutes and regulations, does not make him subject to different rules under the Civil Rights Act than other state employees. The order of summary disposition is reversed and the matter is remanded for further proceedings. On remand, the court should address the issue whether plaintiff has a claim under the Civil Rights Act. Recent decisions on the federal level cast doubt on

REFERENCES
Am Jur 2d, Job Discrimination §§ 98, 101, 102, 109, 110, 2087, 2292, 2293; Military and Civil Defense §§ 175, 186.
See the Index to Annotations under Age Discrimination; National Guard or Militia; Pension and Retirement; Reserves.

the applicability of an age discrimination statute to military reservists.

Reversed and remanded.

CIVIL RIGHTS — AGE DISCRIMINATION — MICHIGAN NATIONAL GUARD — REMEDIES — JURISDICTION — CIRCUIT COURTS.

A member of the Michigan National Guard may bring an age discrimination action pursuant to the Civil Rights Act in circuit court without first exhausting internal administrative remedies provided by federal law; the fact that the person is a member of the National Guard, which is basically funded with federal money, does not make him subject to different rules under the Civil Rights Act than other state employees (10 USC 1552; MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Braun, Kendrick, Finkbeiner, Schaefer & Murphy* (by *Thomas F. James* and *Francis J. Keating*), for plaintiff.

*Frank J. Kelley,* Attorney General, and *Milton I. Firestone* and *George M. Elworth,* Assistant Attorneys General, for defendants.

Before: MICHAEL J. KELLY, P.J., and SULLIVAN and G. S. ALLEN,* JJ.

G. S. ALLEN, J. This appeal involves an action for age discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* Plaintiff, now age sixty-one, enlisted in the Michigan National Guard in 1947, at the age of eighteen. He served as an active member of the Guard from 1947 through 1986, during which period he advanced from the rank of private to the rank of brigadier general. By orders dated October 21, 1986, and December 1, 1986, issued by the Michigan Department of Military Affairs in Lansing, plaintiff was separated from the Guard and placed on the State Military Retired List.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

Following his discharge, plaintiff requested reinstatement through the normal chain of command. When this effort failed, plaintiff, on September 18, 1987, filed an eight-count suit in the Ingham Circuit Court. On March 21, 1988, six of the eight counts were dismissed without prejudice by the trial court. The remaining two counts (Counts III and IV) allege age discrimination under the Civil Rights Act. Defendants moved for summary disposition on these counts. At the hearing held on the motion on July 20, 1988, the Attorney General argued that, in view of the Michigan National Guard's dual federal/state status and the tradition of judicial reluctance to intervene in military matters which have not first been subjected to available administrative review, plaintiff must exhaust his remedies under 10 USC 1552, which provides for an appeal to the Army Board of Correction of Military Records. That section provides, in relevant part:

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. . . . Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

(b) No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request for the correction within three years after he discovers the error or injustice. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

(c) The Secretary concerned may pay, from ap-

plicable current appropriations, a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the repayment of a fine or forfeiture, if, as a result of correcting a record under this section, the amount is found to be due the claimant on account of his or another's service in the Army, Navy, Air Force, Marine Corps, or Coast Guard, as the case may be.

Plaintiff argued that Michigan law does not require the exhaustion of administrative remedies as a condition precedent to a civil rights claim. *Walters v Dep't of Treasury,* 148 Mich App 809, 815; 385 NW2d 695 (1986), lv den 425 Mich 873 (1986); *Marsh v Dep't of Civil Service,* 142 Mich App 557, 562-563; 370 NW2d 613 (1985), lv den 424 Mich 881 (1986). The Attorney General responded that the case law on which plaintiff relied concerns members of the state's classified service rather than a former member of the state National Guard, which is an entity largely funded by federal funds and subject to both federal and state statutes and regulations. The trial court agreed with the Attorney General, adopting the reasoning in *Furman v Edwards,* 657 F Supp 1243 (D Vt, 1987), and stating:

I'm going [to] grant the motion for summary disposition. The Court is not inclined, frankly, to intervene in these military affairs, particularly where they are federal military affairs. I'm not going to go through and recite all of those cases. The language of the *Edwards* case I think is pertinent here. And, the fact that this Plaintiff may well have some claims, which may not be justiciable in the context of the military administrative process really is neither here nor there.[1]

---

[1] The Attorney General had also argued that summary disposition was justified on the ground that, due to controlling federal regulations, plaintiff may not have a claim under the Civil Rights Act.

* * *

And so, I would agree, and since we adopt the reasoning of the *Furman v Edwards* case, I believe, and to dismiss the motion not on the grounds—ultimately the case—not on the law but on the grounds that this action is premature and that the Plaintiff ought to take steps to pursue his remedies with the National Guard. Once having done that he may then and is invited, if there are issues to be resolved, to reinstitute his claim based on [the Civil Rights Act] or the constitutional charge or any other claim he has in state court.

On appeal, the parties restate in greater detail the claims and arguments advanced at the trial level. Additionally, the brief of the Attorney General includes budget figures disclosing that the operation of the Michigan National Guard is largely funded with federal money.

The Civil Rights Act prohibits age discrimination in employment. The act provides, in part:

(1) An employer shall not:

(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status. [MCL 37.2202; MSA 3.548(202)].

The act defines "employer" as "a person who has 1 or more employees," MCL 37.2201(a); MSA

3.548(201)(a). A "person" includes "the state or a political subdivision of the state or an agency of the state." MCL 37.2103(f); MSA 3.548(103)(f). A person who has been injured as a result of a violation of the act may seek injunctive relief or damages, or both, by commencing an action in the circuit court for the county in which the violation occurred or where the employer resides or has its principal place of business. MCL 37.2801; MSA 3.548(801). Although the act provides for administrative remedies to persons aggrieved by violations of the act, MCL 37.2602; MSA 3.548(602) through MCL 37.2606; MSA 3.548(606), *a plaintiff is not required to exhaust these remedies before proceeding in the circuit court. Constantinoff v Emma L Bixby Hosp,* 111 Mich App 575; 314 NW2d 698 (1981); *Marsh, supra; Walters, supra.*

We agree with the general principle of law that, where military matters are involved, the judiciary is reluctant to intervene unless the matter has been first subjected to available administrative review. We even agree with the decision in *Furman, supra.* However, *Furman* did not involve a state statute granting broad authority to bring suit. We cannot agree that where, as in the case before us, a state statute broadly authorizes an aggrieved state employee to file suit against his or her state employer without first exhausting internal administrative remedies, the court lacks jurisdiction merely because the matter in dispute involves the military. Nothing in the act states, or even implies, that all state personnel, *except members of the National Guard,* may file suit without first exhausting available administrative remedies.

For this Court to read into the statute language which is not contained or implied therein would constitute a usurpation of the legislative power. See *Michigan Harness Horsemen's Ass'n v Racing*

*Comm'r,* 123 Mich App 388, 391; 333 NW2d 292 (1983). On its face, the statute permits suit by *all* state employees. It does not state that *some* employees may sue under one set of conditions but *other* employees may only sue under a different set of conditions. Where the language of a statute is clear and unambiguous judicial interpretation is neither required nor permitted. *Michigan Mutual Ins Co v Allstate Ins Co,* 146 Mich App 475, 480; 382 NW2d 169 (1985), aff'd 426 Mich 346 (1986). If the statute is to be interpreted to read that all state personnel except members of the National Guard may file suit without first pursuing their administrative remedies, that change should be made by the Legislature rather than by the courts.

Nor can we agree that because the National Guard is basically funded with federal money, its members are subject to different rules under the act than other state employees. If this were so, personnel in other units of state government whose major source of revenue is derived from federal funds would be similarly affected. For example, the Michigan Employment Security Commission in the Department of Labor is almost exclusively federally funded. Likewise, the Michigan State Housing Development Authority and major components of the Department of Social Services are primarily financed from federal funds rather than from state funds.[2] This Court has clearly held that both public and private employ-

---

[2] The Budget for FY 1989-90 discloses the sources of financing for the following units of government:

|  | General Fund General Purpose | Federal |
|---|---|---|
|  | (in thousands) | |
| Military Affairs | 13,408.1 | 11,844.0 |
| Employment Security Comm | 0.0 | 112,796.9 |
| State Housing Authority | 17,537.7 | 40,102.7 |
| Social Services Field Policy and Operations Administration | 24,785.0 | 117,724.3 |

ees falling within the scope of the act have direct access to circuit courts without first pursuing available administrative remedies.

> We find no basis for a distinction between public and private employees in relation to the need to exhaust administrative remedies prior to filing a claim in circuit court under the Elliott-Larsen Civil Rights Act. We do not view plaintiff's failure to exhaust her administrative remedies as a bar to her right to institute a circuit court action for violation of her civil rights. [*Walters, supra,* pp 819-820].

For the foregoing reasons, we find that the trial court erred in granting summary disposition on the ground that plaintiff must first pursue his administrative remedies. Therefore, we reverse the order of summary disposition and remand to the trial court for further proceedings. However, our decision to remand does not necessarily mean that plaintiff should prevail at the trial level. As noted in footnote 1, the trial court did not address the argument that plaintiff may not have a claim under the Civil Rights Act. Recent decisions on the federal level cast doubt on the applicability of an age discrimination statute to military reservists. *Helm v California,* 722 F2d 507 (CA 9, 1983); *Costner v Oklahoma Army Nat'l Guard,* 833 F2d 905 (CA 10, 1987). Neither of these decisions is mentioned in the briefs of the parties. On remand, this issue should be briefed by the parties and addressed by the court. Other issues, as necessary, may be raised by the parties.

Reversed and remanded. No costs, neither party having yet prevailed. We do not retain jurisdiction.